```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

42ND AND 10TH HOTEL, LLC,

           Petitioner, Cross Respondent

-against-

NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO,

           Respondent, Cross-Petitioner.

1:21-cv-6250 (MKV)

**OPINION AND ORDER DENYING MOTION TO VACATE AND GRANTING PETITION TO CONFIRM ARBITRATION AWARDS**

---

MARY KAY VYSKOCIL, United States District Judge:

42nd and 10th Hotel, LLC (doing business as "Yotel") petitions the Court to vacate arbitration awards rendered pursuant to a collective bargaining agreement with the New York Hotel & Motel Trades Council, AFL-CIO (the "Union"). The Union cross-petitions to confirm the arbitration awards. For the reasons set forth below, Yotel's petition to vacate is DENIED and Respondent's cross-petition to confirm the arbitration awards is GRANTED.

## BACKGROUND

**I.  FACTUAL BACKGROUND**

    *A.  The Parties and the Agreements*

Yotel is a technology-focused hotel with "tech-savvy self-serve" options. [ECF No. 6] ("Pet. Mem.") at 2.[1] As part of its technology-focused brand, Yotel has self-service kiosks for check-in and check-out, and a robotic arm called the "Yobot" to lift guests' bags and place them in storage containers. Pet. Mem. at 2.

---

[1] The Court draws the relevant facts and materials from each party's submission on the pending petition and motions. *Squarepoint Ops LLC v. Sesum*, 2020 WL 996760, at *1 n.1 (S.D.N.Y. Mar. 2, 2020).

1

Yotel originally employed two groups of workers to supplement the hotel's technological features—the so-called "Mission Control" employees and "Ground Control" employees. The Mission Control group worked on the fourth floor as a traditional-style front desk for guests who preferred a non-robotic check-in experience. Pet. Mem. at 2. A group of fifteen Ground Control employees were stationed on the ground floor to assist guests in using the self-service kiosks, bring luggage to the guests' rooms, and perform other common doorman functions. Pet. Mem. at 2; *see* Resp. Mem. at 3. When the Yobot was at capacity, Ground Control employees assisted in providing additional baggage storage. Pet. Mem. at 2.

The employees at Yotel are represented by the Union, a labor organization representing 40,000 workers in the hotel, gaming, and hospitality industry. [ECF No. 21] ("Resp. Mem.") at 1. The Union negotiates the terms and conditions of employment for all workers they represent in New York City as governed by the Industry Wide Collective Bargaining Agreement. [ECF No. 7-2] (the "IWA"). Pet. Mem. at 3 (citing the IWA); Resp. Mem. at 1 (same). The IWA contains a broad arbitration clause which provides, in relevant part, that:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any question regarding arbitrability, substantive procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

IWA § 26(A). The IWA also provides that "[t]he Employer shall have the right to direct and control its employees, [and the] Employer shall have the right to lay off, promote, or transfer any employee." IWA § 22(A); Pet. Mem. at 3.

In 2011, Yotel and the Union entered into a Memorandum of Agreement pursuant to which Yotel "adopt[ed] and agree[d] to be bound by all the terms and conditions of

employment" of the IWA. [ECF No. 7-5] (the "2011 Agreement") at 1. By entering the 2011 Agreement, the Parties agreed to submit "any disputes between [them] or regarding the interpretation or application of the [2011] Agreement" to arbitration in accordance with the provisions of the IWA. 2011 Agreement at 4. That agreement also clarified the scope of the Ground Control employees' duties, as those employees performed a range of duties typically performed by a variety of job classifications under the IWA. Resp. Mem. at 3; 2011 Agreement at 1-2.

In 2016, Yotel and the Union modified the agreement between the Parties to include a Baggage Storage Agreement. [ECF No. 7-4] (the "2016 Agreement"). The 2016 Agreement included a provision stating that "the Hotel may eliminate the 15th Ground Control position and need only maintain a complement of fourteen (14) Ground Control employees on its payroll at any time." 2016 Agreement at 1 ("Paragraph 4"); Resp. Mem. at 3. In the years immediately following the 2016 Agreement, two Ground Control employees left Yotel and were not replaced, bringing the total number of Ground Control employees to twelve. Pet. Mem. at 3; *See also* Resp. Mem. at 3. According to Yotel, the Union did not object at the time to the decrease in Ground Control employees. Pet. Mem. at 3.

By 2020, a "confluence of factors" lead to a decrease in demand for service from Ground Control employees. Pet. Mem. at 3-4. Citing the decrease in demand, Yotel informed the Union on March 3, 2020, that it would no longer provide bell or door services. Pet. Mem. at 4; Resp. Mem. at 3. As part of this change, Yotel moved Mission Control employees from the fourth floor to the ground floor to assist guests with check-in and check-out, and laid off ten of the twelve remaining Ground Control employees pursuant to Article 22 of the IWA. Pet. Mem. at 4; Resp. Mem. at 3. The Union responded by filing a grievance in March 2020 arguing that Yotel

had violated the 2016 Agreement by failing to employ the requisite fourteen Ground Control employees.  Pet. At 4; Resp. Mem. at 3.[2]

Shortly thereafter, the COVID-19 pandemic began in earnest.  By March 29, 2020, Yotel temporarily closed and laid off all employees—including the Ground Control employees.  Pet. Mem. at 4; Resp. Mem. at 4.  For a brief period between April and May 2020, Yotel reopened its doors to lodge first responders and medical personnel, but did not recall the Ground Control employees.  Pet. Mem. at 4; Resp. Mem. at 4.  Yotel did not fully reopen for transient guests until January 8, 2021.  Pet. Mem. at 4; Resp. Mem. at 4.  Once reopened, Yotel recalled some of the employees who were laid off due to the COVID-related closure, but did not recall any Ground Control employees, as it no longer planned to offer the services performed by the Ground Control employees.  Pet. Mem. at 4-5; Resp. Mem. at 4.

### B.     *The Grievance and Resulting Awards*

In early 2021, the Union filed another grievance due to the failure to recall Ground Control employees allegedly in violation of the 2016 Agreement (the "Grievance").  *See* Pet. Mem. at 5; Resp. Mem. at 4.  In February 2021, Yotel and the Union appeared before Independent Chairperson Aaron Shriftman (the "IC") for a hearing on the Grievance.  Resp. Mem. at 4.  A few months later, the IC issued an arbitration award in favor of the Union, concluding that Yotel violated Paragraph 4 of the 2016 Agreement, [ECF No. 7-1] (the "Liability Award"); and ordered Yotel to honor the 2016 Agreement.  *Id.*; Pet. Mem. at 5; Resp. Mem. at 4-5.  The IC determined that Paragraph 4 of the 2016 Agreement "could not be any clearer" in that

---

[2] A hearing was scheduled in response to the Union's March 2020 grievance but never held because Yotel represented that "the proposed/scheduled layoffs will not be effected until the entire Hotel is closed because of the Coronavirus."  Pet. Mem. at 4; Resp. Mem. at 3-4.

it required Yotel to maintain "a complement of fourteen (14) Ground Control employees on its payroll at all times." Liability Award at 16; *see* Pet. Mem. at 5; Resp. Mem. at 4-5.

Yotel failed to comply with the Liability Award. Resp. Mem. at 5. Following that failure, the IC held a compliance hearing and issued a compliance award finding that Yotel owed backpay and benefit fund contributions for each of the Ground Control employees. [ECF No. 20, Ex. A] (the "Compliance Award")[3]; Resp. Mem. at 6. The IC included a 15% penalty for Yotel's "willful" failure to comply with the liability award, as required by IWA Article 26(L). Compliance Award at 5-6; Resp. Mem. at 6. To date, Yotel has not complied with the either the Liability or Compliance Award. Resp. Mem. at 6.

## II.     PROCEDURAL BACKGROUND

Yotel commenced this action by petition and moved to vacate the Liability Award. [ECF NO. 1] ("Pet. Vacate."); [ECF No. 5] ("Pet. Mot."). The Union cross-petitioned to confirm both the Liability and Compliance Awards (the "Awards"), and filed a memorandum in support of confirmation. [ECF NO. 19] ("Resp. Pet."); Resp. Mem. Thereafter, Yotel and the Union each filed a reply memorandum. [ECF No. 22] ("Pet. Reply Mem."); [ECF No. 23] ("Resp. Reply Mem.").

---

[3] The Liability Award determined that Yotel failed to comply with Paragraph 4 of the 2016 Agreement (requiring the hotel to employ 14 Ground Employees). The IC "retain[ed] jurisdiction to hear any and all disputes concerning compliance with [the Liability Award]." Liability Award at 17. Following the rendering of the Liability Award, the Union asked Yotel if it intended to re-hire the employees, to which Yotel said it would not. *See* Compliance Award at 1-2. The Union then raised another grievance for willful violation of the hiring provision in the 2016 Agreement. See Compliance Award at 1. Under the IWA, when an employer found by the IC to have "willfully violated a clearly defined contractual provision . . . relating to scheduling, layoff, recall" and "where such violation has resulted in a monetary award to the affected employees," the IC "shall award to such employees an additional amount equal to fifteen percent of the awarded amount. IWA Section 26(L) (emphasis added). The Compliance Award is therefore a 15% penalty on the Liability Award, permitted by the IWA, for "willful" failure to comply with the Liability Award.

## **LEGAL STANDARD**

The confirmation of an arbitration award is a summary proceeding. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof") (internal citations and alterations omitted).  The petitioner's burden is therefore "not an onerous one," while the burden on the party opposing confirmation of the award is "very high." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp.*, LLC, 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3, 2009); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (noting that courts cannot review merits of arbitration awards).  Judicial review of arbitration awards is "'severely limited,' so as not to frustrate the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'" *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71-72 (2d Cir. 2012) (citations omitted).  "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Eastern Assoc. Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000)).  The Second Circuit has underscored that courts should exercise an "extremely deferential standard" when reviewing arbitration awards. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (noting that arbitration awards are entitled to great deference).

This deference to arbitrators carries heightened importance in the labor context, as "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the

final say on the merits of the awards." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). An arbitrator's award arising from a collective bargaining agreement "is legitimate and enforceable as long as it 'draws its essence from the collective bargaining agreement' and is not merely an exercise of the arbitrator's 'own brand of justice.'" *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (quoting *Enterprise Wheel*, 363 U.S. at 597). Even when the arbitrator has "committed serious error," the award should still be confirmed so long as the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Thus, upon review "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

## DISCUSSION

Yotel challenges the Liability Award under three theories: 1) that the IC exceeded his powers under the IWA in contravention of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.*; 2) the IC did not "draw his award from the 'essence' of the IWA" in contravention of the Labor Management Relations Act, 29 U.S.C. § 185; and 3) the Liability Award is "commercially unreasonable and creates absurd results." Pet. Mem. at 5, 12-13. For the reasons that follow, the Court is unpersuaded by any of Petitioner's theories to overturn the Liability Award, and the Court confirms the Awards.

**I.   THE IC DID NOT "EXCEED HIS POWERS" UNDER THE IWA**

As a threshold matter, the Court notes that the LMRA, not the FAA, governs the Court's review of Petitioner's motion to vacate the labor arbitration award. *Coca-Cola Bottling Co. of*

*N.Y. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 53 (2d Cir. 2001) ("[I]n cases brought under Section 301 of the [LMRA] . . . the FAA does not apply."); Pet. Vacate. ¶ 3 ("This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185(c)."); Pet. Mem. (acknowledging that "[b]ecause this Award is a labor arbitration award, it is subject to review under Section 301(a) of [LMRA]."). Nonetheless, Courts in this Circuit consider the FAA as guidance in LMRA cases involving petitions to confirm or vacate labor arbitration awards. *See Loc. Union No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Canada v. Bass*, 2015 WL 1402884, at *5–*6 (E.D.N.Y. Mar. 25, 2015); *see also 1199 SEIU United Healthcare Workers E. v. Lily Pond Nursing Home*, 2008 WL 4443945, at *3 (S.D.N.Y. Sept. 29, 2008). The Court therefore considers the vacatur provisions in the FAA on these petitions.

The FAA allows for vacatur when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Under Section 10(a)(4), the only question the Court must resolve "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health*, 569 U.S. at 569. The Second Circuit has "'consistently accorded the narrowest of readings' to Section 10(a)(4)." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y. EMC Nat. Life. Co.*, 564 F.3d 81, 85 (2d Cir. 2009)).

Yotel asserts that, in rendering the Liability Award, the IC misinterpreted the IWA in connection with the 2016 Agreement. Pet. Mem. at 5-6. In its view, Article 22 of the IWA gives Yotel "the right to lay off, promote, or transfer any employee," Pet. Mem. at 6; IWA § 22(A), and that Article 23 then "explains the procedures for layoffs, recall, and rehire." Pet. Mem. at 6.

8

Therefore, according to Yotel, Pet. Mem. at 7, the IC erred when it determined that the 2016 Agreement superseded the IWA's hiring-and-firing provisions and required Yotel to maintain fourteen Ground Control employees on its payroll at all times. Liability Award at 16.

For his part, in rendering his decision, the IC considered and directly responded to the arguments Yotel now renews in its petition. The Liability Award explained that "[t]here is no question that Article 22 of the IWA affords an employer the right to institute layoffs, but that right is subject to restrictions found elsewhere in the IWA *and in any supplemental agreements between parties*." Liability Award at 16 (emphasis added). Looking at the specific language contained in the 2016 Agreement (which the IC determined "could not be any clearer"), the IC concluded that supplemental agreement thereby "restricted" the general language contained in the IWA. Liability Award at 16.

Yotel's argument is little more than an improper attempt to relitigate the issue decided by the IC in the underlying arbitration. Even if the Court agreed with Yotel that a studied analysis of the conflicting provisions should have resulted in an award in its favor, under governing law, such a view would not warrant vacatur. "[I]t is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained" that is "dispositive." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Because it is beyond dispute that the IC "interpreted the parties' contract," and that interpretation is at the very least "barely colorable," the Court will not vacate the Liability Award. *Oxford Health*, 569. U.S. at 569; *D.H. Blair & Co.*, 462 F.3d at 110.

II.     **THE IC DREW HIS AWARD FROM THE "ESSENCE" OF THE IWA**

Under the LMRA "an arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers*

9

*Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Yotel again renews its argument that, "[r]ather than interpret and apply the IWA, the [Liability] Award 'completely ignored . . . the IWA's terms,'" charging the IC with exacting "rough 'industrial justice.'" Pet. Mem. at 13. This repackaged argument also fails. A court may not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Nat'l Football League*, 820 F.3d at 536. Rather, the Court may "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* There is no dispute that the IC was fully within his authority when adjudicating the underlying dispute. Accordingly, while "the arbitrator may not ignore the plain language of the contract" the Court must not reject an award based on an argument that the arbitrator misread the contract. *Misco*, 484 U.S. at 38. While the Court does not necessarily agree that the IC misread the contract, the determination is not necessary here. The Court will not vacate the award "as long as the arbitrator is even arguably construing or applying the contract," even if the moving party urges that such an application results in "serious error." *Id.* Because the IC interpretation of the contract is colorable, vacatur is not warranted for the reasons discussed above.

### III.   YOTEL'S "COMMERCIALLY UNREASONABLE" ARGUMENT DOES NOT WARRANT VACATUR

Yotel finally argues that the "IC's interpretation of Paragraph 4 is commercially unreasonable and irrational" because it would require "Yotel to employ fourteen people after implicitly finding—as an undisputed fact—that those people would have no work whatsoever to perform. Pet. Mem. at 14. For the reasons discussed above, even if the Court were to agree that principles of contract interpretation would require the Court to read the 2016 Agreement differently than the IC, the Court cannot change the "dispositive" interpretation of the IC. *Nat'l*

*Football League*, 820 F.3d at 536.  Vacatur is therefore not warranted on this contract interpretation argument.

### IV.     THE COURT CONFIRMS THE LIABILITY AND COMPLIANCE AWARDS

The "[c]onfirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Constructioncorp*, 2014 WL 3844619, at *1 (S.D.N.Y. Aug. 1, 2014).  Accordingly, unless the award is "procured through fraud or dishonesty," the Court is "bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, 2016 WL 3194370, at *2 (S.D.N.Y. June 6, 2016).  This Court's limited role is to ensure "that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Nat'l Football League,* 820 F.3d at 537 (quoting *Misco*, 484 U.S. at 38).

The Court concludes that the IC applied the contract and acted within the scope of his authority when rendering the Awards.  The record does not indicate, and Petitioners do not suggest, that the Awards were procured through means of fraud or dishonesty.  This Court now "makes what is already a final arbitration award a judgment of the Court." *Trs. for the Mason Tenders Dist. Council Welfare Fund*, 2014 WL 3844619, at *1.  The Liability and Compliance Awards are confirmed.

### CONCLUSION

Having considered Petitioner's arguments for vacating the Liability Award, the Court finds them to be without merit.  Accordingly, the cross-petition [ECF No. 19] to confirm the

Liability and Compliance Awards is GRANTED, and the motion to vacate [ECF No. 5] is DENIED.

The Clerk of the Court respectfully is requested to close the motion at ECF No. 5 and to terminate the case.

**SO ORDERED.**

**Date:   March 30, 2022**
**         New York, NY**                                                                      _____
                                                                                               **MARY KAY VYSKOCIL**
                                                                                               **United States District Judge**